**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Troy B., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 3:21-cv-50325 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Troy B. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his applications for a period of disability, disability insurance benefits, and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is reversed and the case is remanded.

**I. Background**

On September 13, 2019, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income alleging a disability beginning on March 24, 2019, because of a work-related back injury, as well as anxiety, depression, and post-traumatic stress disorder. R. 77, 89.

A remote hearing on Plaintiff's applications was held before an administrative law judge (ALJ) on February 9, 2021. R. 13. The ALJ issued a written decision on February 22, 2021, finding that Plaintiff was not disabled under the applicable sections of the Social Security Act and thus not entitled to benefits. R. 23–24.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 5.

At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since his alleged onset date. R. 15. At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine, status post-surgery; adult antisocial behavior; adjustment disorder with mixed anxiety and depressed mood; ethanol use disorder; and cocaine use disorder." R. 16. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 16–18. The ALJ then found that Plaintiff had the residual functional capacity (RFC)

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ladders, ropes or scaffolds, stoop, kneel, crouch, crawl and balance; can understand, remember and carryout instructions for simple routine repetitive tasks with sufficient persistence concentration or pace to timely and appropriately complete such tasks; no fast paced production rate or strict quota requirements, but can meet end of day requirements; and occasional contact with coworkers supervisors and the general public, but no problem solving tasks with the general public.

R. 18. Applying this RFC at step four, the ALJ concluded that Plaintiff could not return to his past relevant work, which required a medium level of exertion. R. 22. Based on hearing testimony from an impartial vocational expert, the ALJ found at step five that a significant number of jobs existed in the national economy that Plaintiff could perform, such as housekeeping cleaner, marker, and office helper, all of which are light work as generally performed. R. 23.

After the Appeals Council denied Plaintiff's request for review on July 16, 2021, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff raises a number of arguments in his opening brief, most of which are undeveloped, in a disfavored "kitchen sink" approach. *See Nash v. Colvin*, No. 15 CV 50019, 2016 WL 4798957, at *7 n.7 (N.D. Ill. Sept. 14, 2016) ("'Kitchen sink' memoranda cause unnecessary work for the Government and the Court and generally contain unpersuasive arguments (as in this case) that only serve to cheapen and distract from the arguments with merit."). However, one of Plaintiff's arguments is persuasive. Specifically, Plaintiff argues that the ALJ improperly cherry-picked evidence to support her determination that: (1) Plaintiff's limitation in interacting with others was moderate rather than marked and (2) Plaintiff had the RFC to occasionally interact with coworkers, supervisors, and the general public. The Court agrees that the ALJ improperly cherry-picked evidence, and the case will be remanded on that basis.

### A. Plaintiff's Limitation in Interacting with Others

When a claimant has mental impairments, the ALJ must rate the claimant's degree of functional limitation based on the extent to which those mental impairments interfere with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis in

3

four broad functional areas, one of which is "interact with others." 20 C.F.R. § 404.1520a. These four areas are called the "paragraph B criteria" because they appear in paragraph B of the listings for each mental disorder (other than intellectual disorders). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A2b. The ALJ must rate the claimant's limitations in each of the paragraph B criteria as none, mild, moderate, marked, or extreme. *Id.* § 12.00F. A rating of "moderate" means the claimant's functioning is "fair," whereas a rating of "marked" means the claimant's functioning is "seriously limited." *Id.* These ratings "are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process" and inform the ALJ's mental RFC assessment used at steps four and five, although the RFC assessment "requires a more detailed assessment by itemizing various functions contained in the [paragraph B criteria]." SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

A claimant's RFC is the maximum work he can perform despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct [her] own RFC finding without a proper medical ground and must explain how [she] has reached [her] conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Here, the ALJ concluded at step three that

> [i]n interacting with others, the claimant has a moderate limitation. The State agency psychological consultants opined that the claimant was less (mildly) limited in this area [R. 81, 110]. The claimant writes on the function report that he does not get out much and gets nervous around authority figures, but does not indicate an overall problem getting along with others [R. 280–81]. He testified that he has had no problems with authority or supervisors at work [R. 61]. Although he has had legal problems and is diagnosed with Adult Antisocial Behavior [R. 634–37]. Mental status exam by his therapist notes that the claimant is uncooperative, sarcastic, evasive and has impaired judgment in relationships [R. 1018], but later is cooperative, calm and pleasant [R. 989]. Therefore, the undersigned finds that the claimant's functioning independently, appropriately, effectively, and on a sustained basis in this area is fair.

R. 17. The ALJ's RFC assessment purportedly reflected this degree of limitation. R. 17–18. Based on this moderate limitation and select evidence from the record, the ALJ imposed an RFC restriction of "occasional contact with coworkers supervisors and the general public, but no problem solving [sic] tasks with the general public." R. 18–21. According to the ALJ, "[Plaintiff's] psychological issues, including adjustment disorder/antisocial behavior and the effects of the alcohol/drugs are accounted for with limiting the residual functional capacity to simple tasks, no fast paced work, and social restrictions." R. 21.

**B. Cherry-Picking**

Plaintiff argues that the ALJ's findings are erroneous because the ALJ selected and discussed only the evidence that favored her conclusion. Pl.'s Br. at 4–5 & n.24, Dkt. 14 (citing *Payne v. Colvin*, 216 F. Supp. 3d 876, 886 (N.D. Ill. 2016)). In support of his argument, Plaintiff refers to evidence that he believes warrants a marked limitation in interacting with others, including his extensive legal history; hospitalization on June 1, 2020, for homicidal thinking; hospitalization on July 7, 2020, following a suicide attempt; and his diagnoses of major depression, anxiety, cocaine disorder, and alcohol dependance. *Id.* at 4. The Commissioner responds by noting

that Plaintiff does not cite to the record to support his argument and notes that this evidence "may or may not be in the record" and in any event, "the ALJ considered the evidence plaintiff alludes to." Def.'s Br. at 9–10 & n.6, Dkt. 17. Plaintiff presses this issue—and only this issue—in his reply brief. Pl.'s Reply at 1–2, Dkt. 20.

Ideally, Plaintiff would have cited to the evidence supporting his claim in the administrative record,[2] but Plaintiff's description of his hospitalizations, along with the exact dates, was certainly sufficient for the Court to locate Exhibit 15F, which consists entirely of the hospital's records reflecting his admissions for homicidal ideation and suicide attempt. R. 792–852. An identical copy of those records appears in Exhibit 16F, R. 875–935, so these two hospitalizations alone take up 122 pages of the 713-page medical record, R. 325–1037. The Commissioner's statement that these records "may or may not be in the record" is not taken well by this Court.

The Commissioner's next argument, that "the ALJ considered the evidence plaintiff alludes to," is not supported by the record. The ALJ made no mention of Plaintiff's hospitalization for homicidal ideation—not in her discussion of the Paragraph B criteria, not in her summary of the medical records, and not in her RFC analysis. *See* R. 13–24. Indeed, the Commissioner, like the ALJ, utterly fails to acknowledge Plaintiff's hospitalization for homicidal ideation. Def.'s Br. at 9–10 & n.6, Dkt. 17. The Commissioner does not argue that the admission is irrelevant to an analysis of Plaintiff's ability to interact with others, that the ALJ's failure to mention it is harmless

---

[2] This case was fully briefed before the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) took effect on December 1, 2022. The Court is confident that future briefs will satisfy the requirement that "[a] brief must support assertions of fact by citations to particular parts of the record." Suppl. Rule 5.

error, or make any other excuse for the ALJ's failure to mention these records.[3] With respect to Plaintiff's suicide attempt, the ALJ did list it in her summary of the records as follows: "The claimant is admitted to Swedish American Hospital due to suicide attempt by overdose on Zoloft and muscle relaxers, July 7 to July 10, 2020. He reportedly overdosed due to life stressors/no hope (16F/14) [R. 866]." R. 21.[4] The ALJ, however, did not analyze this evidence or explain how it factored into her conclusions about Plaintiff's RFC. *See Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at \*4 (N.D. Ill. May 6, 2015) ("[M]erely summarizing medical evidence is not the same thing as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled.").

While it is true that an ALJ is not required to discuss every piece of evidence in the record, "[a]n ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding," because by doing so, the ALJ fails to support her conclusion of non-disability with substantial evidence. *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020). An ALJ improperly cherry-picks evidence not only when the ALJ completely disregards evidence supporting a finding of disability, but also when the ALJ "emphasize[s]" and "overstate[s] the evidence" and "overlook[s], or at least d[oes] not acknowledge" facts that support a finding of disability. *Lothridge*, 984 F.3d at 1234; *see also Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (reversing ALJ opinion that "highlight[ed]" and "made much of the fact[s]" supporting a finding of non-disability but "discounted" and "ignor[ed] evidence to the contrary").

---

[3] The Commissioner's failure to defend this aspect of the ALJ's decision could be construed as waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *see also Roxanne R. v. Berryhill*, No. 18 C 5484, 2019 WL 2502033, at \*6 n.6 (N.D. Ill. June 17, 2019) ("Notably, [the Commissioner] does not respond to this argument, thus, waiving any response."). As with Plaintiff's failure to cite the administrative record, the Court will afford some latitude and consider the Commissioner's broader arguments.

[4] The ALJ presumably intended to cite 15F/14 (R. 801) instead. *Compare* R. 866 (urinalysis dated September 2, 2020), *with* R. 801 (psychiatry inpatient history dated July 8, 2020), 884 (same).

"'[C]herry-picking' is especially problematic where mental illness is at issue, for 'a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition.'" *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)). The Court concludes that the ALJ both overlooked evidence that supported a finding of disability and improperly highlighted evidence that supported a finding of non-disability.

With respect to Plaintiff's hospitalization for homicidal ideation, the record reflects that on June 1, 2020, Plaintiff presented for a therapy session, stated that he had been using cocaine, and claimed "I want to kill everyone and I don't feel right," referring to environmental, social, financial, and medical stressors. R. 1008. His mental status exam recorded "thoughts of self-harm and homicidal ideation." R. 1008. Plaintiff's therapist concluded that he was a danger to himself and others and had him escorted to the emergency room. R. 840, 923, 1008. In the emergency room, Plaintiff's mood and speech were normal but his affect was flat and his behavior was hyperactive. R. 840, 923. His thought content was not paranoid or delusional but included homicidal ideation without a homicidal plan. R. 840, 923. Plaintiff was discharged later that night and referred for substance abuse treatment. R. 836, 919.

The ALJ's decision is bereft of any mention of this evidence. Because of the ALJ's silence, the Court cannot determine whether the ALJ overlooked this evidence when reviewing the record or deliberately omitted it from her decision. In the absence of some explanation, the Court cannot trace a logical bridge from this evidence to the ALJ's conclusion that Plaintiff's limitation in interacting with others was moderate. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (per curiam) (citation omitted) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling. . . . Otherwise it is impossible for a reviewing court to tell whether the ALJ's

decision rests upon substantial evidence.").

The ALJ's failure to address Plaintiff's hospitalization for homicidal ideation alone would warrant remand.[5] *See, e.g.*, *Jill M. v. Saul*, No. 19-CV-188, 2020 WL 8674008, at \*3 (N.D. Ind. July 1, 2020). However, the ALJ's consideration of other evidence at step three reinforces the Court's conclusion that the ALJ engaged in impermissible cherry-picking.

When concluding Plaintiff had a moderate limitation in interacting with others, the ALJ cited two mental status exams conducted by Plaintiff's counselor. At the first, in April 2020, Plaintiff was described as "uncooperative, sarcastic, and evasive." R. 1018. At the second, in October 2020, Plaintiff was "cooperative, calm, [and] pleasant." R. 989. Plaintiff argues that the ALJ should have further explained how these two mental status examinations supported only a moderate limitation in interacting with others. Pl.'s Br. at 4, Dkt. 14 (citing R. 17). In response, the Commissioner claims that the ALJ's analysis was adequate because these appointments were six months apart and showed an improvement based on Plaintiff's therapy. Def.'s Br. at 9–10, Dkt. 17. This argument is unavailing.

First, the ALJ did not say that these mental status examinations reflected an improvement, she merely recited the two findings without any explanation as to their relevance to her findings. The Commissioner's "attempt to supply a post-hoc rationale" for the ALJ's decision "runs contrary to the *Chenery* doctrine" and is improper. *Lothridge*, 984 F.3d at 1234–35; *see also Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon."). But even assuming the

---

[5] The ALJ's failure to address the hospitalization for homicidal ideation is especially problematic because Plaintiff specifically mentioned this hospitalization in his three-page pre-hearing brief before the ALJ. R. 321. Although the ALJ had an independent duty to inquire into all issues, 20 C.F.R. § 404.946, Plaintiff nevertheless pressed the issue at an early opportunity, an approach the Supreme Court has endorsed. *Carr v. Saul*, 141 S. Ct. 1352, 1360 & n.5 (2021).

ALJ had claimed that these mental status exams reflected an improvement, she would still have engaged in impermissible cherry-picking by choosing two snapshots from Plaintiff's treatment record, rather than considering his overall condition. *See Punzio*, 630 F.3d at 710; *see also* 20 C.F.R. § 404.1520a(c)(1) (ALJ must consider "longitudinal picture"). The requirement of considering a claimant's overall condition is particularly relevant in this case, where Plaintiff was twice hospitalized for mental health crises in between the two cited exams. Although a longitudinal view of the record may still have shown that Plaintiff had only a moderate limitation in interacting with others, the ALJ could not reach that conclusion without addressing the contrary evidence. *Meuser*, 838 F.3d at 912.

The ALJ's cherry-picking was further compounded by her reliance on the state agency psychological consultants' opinions that Plaintiff had only a mild limitation in interacting with others. R. 17. The psychological consultants were unaware of Plaintiff's two psychiatric hospitalizations. At the initial level, a state agency psychological consultant reviewed Plaintiff's application on January 5, 2020, well before his first hospitalization. R. 81–82, 93–94. At the reconsideration level, another state agency psychological consultant reviewed Plaintiff's application on June 8, 2020, relying on evidence from April 2020 and earlier. R. 104–07, 117–120. This state agency psychological consultant explicitly noted that Plaintiff had not been admitted for psychiatric treatment. R. 111, 124. This statement indicates that had the state agency consultants been aware of the two psychiatric admissions their opinions may have been different. *See Moreno v. Berryhill*, 882 F.3d 722, 728–29 (7th Cir. 2018) (per curiam) (state agency physician's analysis was "stale" and warranted new mental health assessment because later treatment notes bearing directly on criteria that state agency physician had considered could have

10

altered state agency physician's conclusion about claimant's mental disorder).[6]

By concluding that the ALJ cherry-picked evidence regarding Plaintiff's limitation in interacting with others, the Court is not, as the Commissioner suggests, reweighing the evidence. When reversing on this basis, "[the Court does] not state that the ALJ's view of the facts is ultimately wrong; [it] simply hold[s] that her apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal." *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014).

## C. Further Issues on Remand

This case is remanded so that the ALJ can examine and discuss the impact of Plaintiff's admissions for homicidal ideation and suicide attempt on Plaintiff's RFC. These records should also be provided to the state agency psychiatric consultant and an updated report obtained. On remand, the ALJ must also expand on her analysis of Plaintiff's use of drugs and alcohol. Under the Social Security Act, a claimant cannot be found disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Accordingly, an ALJ must determine whether the claimant

---

[6] The Commissioner argues that the Court should nevertheless affirm the ALJ's decision because "[n]o doctor found plaintiff had greater mental limitations" than the ALJ found. Def.'s Br. at 8, Dkt. 17. In support of this proposition, the Commissioner cites *Best v. Berryhill*, in which the Seventh Circuit stated, "There is no error when there is 'no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ.'" *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (unpublished) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). In *Best*, however, the plaintiff's doctors and state agency doctors had the opportunity to recommend limitations based on the evidence the plaintiff cited— there, a diagnosis of radiculopathy. *Best v. Acting Comm'r of Soc. Sec. Admin.*, No. 17-CV-23, 2017 WL 6523929, at *4 (N.D. Ind. Dec. 21, 2017), *aff'd*, 730 F. App'x 380 (7th Cir. 2018). Here, the two state agency doctors who evaluated Plaintiff's mental limitations lacked the very evidence that Plaintiff alleges would warrant more stringent social interaction limitations in his RFC. When an ALJ fails to submit new, significant evidence to medical scrutiny, the ALJ's reliance on a state agency doctor's stale opinion is reversible error. *Moreno*, 882 F.3d at 728 (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)); *see also Best*, 2017 WL 6523929, at *4 ("[I]t appears that the Plaintiff's arguments would, in essence, have invited the ALJ to improperly substitute her personal observations for the considered judgments of medical professionals."). *Best* has no application to the present case.

would still be found disabled if the claimant "stopped using drugs or alcohol." 20 C.F.R. § 404.1535. Here, the ALJ addressed the issue in just one sentence: "Drug and alcohol abuse is not material." R. 21. Not only does this sentence provide the Court with no basis to evaluate the ALJ's reasoning, it also violates SSR 13-2p, which states that "[a] single statement that [drug addiction or alcoholism] is or is not material to the determination of disability by an adjudicator is not sufficient." SSR 13-2p, 2013 WL 621536, at *15 (S.S.A. Feb. 20, 2013). Moreover, if the ALJ implicitly conducted a materiality analysis by simply disregarding Plaintiff's hospitalization for homicidal ideation because of his use of drugs and alcohol, such an approach is impermissible. *Reid C. v. Berryhill*, No. 17 CV 50074, 2018 WL 3105954, at *2 (N.D. Ill. June 25, 2018). Although a materiality analysis can be difficult, the ALJ must address the issue head-on and provide an analysis that enables meaningful judicial review. *Id.* at *4; *see also Reid C. v. Saul*, No. 19 CV 50101, 2020 WL 6747001, at *2–5 (N.D. Ill. Nov. 17, 2020) (noting that ALJ's analysis on first remand was inadequate).

In light of the Court's remand, the Court need not address Plaintiff's remaining arguments. However, Plaintiff's counsel should raise all issues argued on appeal with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion.

Date: January 24, 2023                    By: _Lisa A. G_____
                                               Lisa A. Jensen

12

United States Magistrate Judge